JAMES RAFFERTY & another *vs.* SANCTA MARIA HOSPITAL
& others.

Middlesex.    November 16, 1976. — September 30, 1977.

Present: KEVILLE, GOODMAN, & ARMSTRONG, JJ.

*Jurisdiction,* Zoning. *Practice, Civil,* Zoning appeal, Findings by
judge, Parties, Amendment. *Pleading, Civil,* Amendment. *Zoning,*
Variance. *Evidence,* Presumptions and burden of proof. *Words,*
"Person aggrieved."

In an appeal from a decision of a city's board of appeal, the judge did
not abuse his discretion in allowing the complaint to be amended
prior to judgment to add plaintiffs even though the original plain-
tiffs did not have standing to bring the action. [626-629]

In an appeal from a decision of a city's board of appeal granting vari-
ances to a hospital for the construction of facilities prohibited in the
district, a plaintiff who was either an abutter or an abutter to an
abutter to the hospital and was a home owner in the same district
was a "person aggrieved" and had standing to maintain the action.
[629-630]

In an appeal from a decision of a city's board of appeal granting vari-
ances to a hospital for the construction of facilities prohibited in
the district, the judge did not err in finding that there were "[no]
conditions especially affecting this parcel that d[id] not affect the
zoning district generally." [630-631]

CIVIL ACTION commenced in the Superior Court on No-
vember 11, 1974.

The case was heard by *Cross,* J.

*John F. Cremens* (*Howard J. Alperin* with him) for the
Sancta Maria Hospital.

*George A. Singer* for the plaintiffs.

GOODMAN, J.    This is an appeal by the Sancta Maria
Hospital (hospital) from a judgment entered by a Su-
perior Court judge pursuant to G. L. c. 40A, § 21,[1] an-

---

[1] The statutory references in this opinion are to the provisions of
The Zoning Enabling Act (which is applicable to this case) as in effect
prior to St. 1975, c. 808, § 3.

nulling a decision of the board of appeal of Cambridge (board) which granted to the hospital variances necessary for the construction of a professional office building and parking garage at 799 Concord Avenue in Cambridge. The hospital is a nonconforming use located in a Residence B zoning district in the city of Cambridge. The facility it proposes to build is prohibited in Residence A and B districts but not elsewhere.

The board's decision was filed with the city clerk on October 21, 1974; and on November 11, 1974, one Richard Cahill and the Cambridge Highlands Neighborhood Association (association) appealed to the Superior Court praying that the board's decision be annulled. The hospital[2] filed an answer and moved to dismiss on the ground (among others) that "[n]either plaintiff is aggrieved by the decision of the Board of Appeals." Thereupon on January 22, 1975, after hearing, the plaintiffs' motion to file an amended complaint was allowed. The amended complaint added a number of individuals as plaintiffs, including James Rafferty and William Wagner, the present appellees. The amended complaint alleges that Richard Cahill owns real estate lying "approximately 250 feet from the lot of defendant Sancta Maria Hospital" and that the association "is an unincorporated association of owners of real estate and residents living in close proximity to defendant Sancta Maria Hospital." The hospital filed an answer denying those allegations and alleging that "[n]one of the plaintiffs [is] aggrieved by the decision of the Board of Appeals." Subsequently, on January 28, 1975, the Superior Court remanded the case to the board "to make further subsidiary findings" and retained jurisdiction. On February 7, 1975, the board filed additional findings, and the case was tried on February 11 and February 13, 1975. The judge filed "Findings, Rulings and Order for Judgment" and entered a judgment annulling the decision of the board and dismiss-

---

[2] The board filed an appearance and a notice of appeal from the final judgment. It does not appear to have otherwise participated in the case.

ing the complaint as to all the plaintiffs except Rafferty and Wagner. This appeal followed.

The hospital argues that (1) the Superior Court had no jurisdiction to hear the appeal from the board since the initial plaintiffs had no standing, (2) the added plaintiffs are not "persons aggrieved," and (3) the statutory requisites for the granting of a variance were established by the evidence.

1. The major premise of the hospital's jurisdictional argument is the statement in *Marotta* v. *Board of Appeals of Revere,* 336 Mass. 199, 202-203 (1957), that [t]he Superior Court had no jurisdiction to consider the case unless an appeal . . . was taken by an aggrieved person." Its minor premise is that neither Cahill nor the association, the initial plaintiffs, was a "person aggrieved." From these the hospital asks us to conclude that the Superior Court had no power to allow the plaintiffs' motion to amend by adding Wagner and Rafferty as plaintiffs.

We accept the hospital's minor premise, since the motion to dismiss as against the two initial plaintiffs was properly allowed. Reliance cannot be placed upon the allegations in their complaint describing them and their interest, because those allegations were denied in the hospital's answer, which also raised the issue of the plaintiffs' standing. See *Carey* v. *Planning Bd. of Revere,* 335 Mass. 740, 744-745 (1957). Thus whatever presumption placing the burden of going forward upon the hospital might have arisen from the allegations in the complaint, had they not been denied, has no place in this case; nor was any attempt made to introduce evidence to sustain the plaintiffs' burden of proving standing. See discussion and cases collected in *Waltham Motor Inn, Inc.* v. *LaCava,* 3 Mass. App. Ct. 210, 213-215 (1975).[3]

Though the action was properly dismissed as against the initial plaintiffs, that did not vitiate the prior amendment

---

[3] Our approach in dealing with Cahill and the association without distinction is not in any way an indication that the association's standing as a party is not otherwise defective. See *Save the Bay, Inc.* v. *Department of Pub. Util.,* 366 Mass. 667, 675 (1975).

Rafferty *v.* Sancta Maria Hospital.

adding a party with standing. That the action before such an amendment was flawed does not necessarily preclude a curative amendment though the flaw is described as "jurisdictional." *Pierce* v. *Board of Appeals of Carver,* 369 Mass. 804, 810-811 (1976), discussing *Shaughnessy* v. *Board of Appeals of Lexington,* 357 Mass. 9 (1970), and pointing out that the court in the *Shaughnessy* case allowed the late joinder of a member of the board though the failure to give him timely notice was termed "jurisdictional." See *Cuzzi* v. *Board of Appeals of Medford,* 2 Mass. App. Ct. 887 (1974), following the *Shaughnessy* case. *City Council of Peabody* v. *Board of Appeals of Peabody,* 360 Mass. 867 (1971), is directly in point; the court in that case held that the Superior Court might allow a motion to substitute the mayor for the city council where the city council had no standing. Nor does it appear that this was considered a merely formal defect (cf. *Board of Health of Woburn* v. *Sousa,* 338 Mass. 547, 548 [1959]); the court pointed out that the Legislature had (St. 1969, c. 706) explicitly excluded from G. L. c. 40A, § 21, any standing for a municipal board.

These cases evince a policy of broad powers of amendment — "more liberal than elsewhere," *Wadsworth* v. *Boston Gas Co.,* 352 Mass. 86, 88 (1967) — which has characterized our practice. Particularly relevant is the familiar law that an amendment may be allowed which would bring in a party who, when added, would have been barred by a statute of limitations from commencing an independent action and, indeed, that this is a reason to permit the amendment. *Wadsworth* v. *Boston Gas Co.,* 352 Mass. at 88.[4]

---

[4] The *Wadsworth* case is cited in the Reporters' Notes to Mass.R.Civ.P. 15, appearing in Mass. Ann. Laws, Rules of Civil and Appellate Procedure at 288 (1974); and the Massachusetts practice is preserved in Rule 15(c), 365 Mass. 762 (1974), which provides unqualifiedly that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading." Contrast rule 15(c) of the Federal rules. See Smith & Zobel, Rules Practice § 15.9 (1974). Cf. *Jessie* v. *Boynton,* 372 Mass. 293, 295 (1977), citing *Castellucci* v. *United States Fid. & Guar. Co.* 372 Mass. 288, 289-290 (1977).

*Walsh* v. *Curcio,* 358 Mass. 819 (1971). Nor would the characterization of the limitation period as a "limitation upon the right as well as the remedy" appear to be significant. *Bressler* v. *Averbuck,* 322 Mass. 139, 144 (1947), citing as authority *Peterson* v. *Cadogan,* 313 Mass. 133, 134 (1943), which upheld the substitution of a defendant in a tort action, although the limitation period had run.

We do not find persuasive the hospital's contention that the new plaintiffs could become parties only by moving to intervene pursuant to the clause in G. L. c. 40A, § 21, as amended through St. 1974, c. 78, § 1, which provided that "[o]ther interested persons may be permitted to intervene, upon motion." (The hospital appears to concede that intervention under that unqualified provision would have been proper.) No issue concerning the applicability of the Massachusetts Rules of Civil Procedure was raised in the Superior Court at the hearing on the motion of the initial plaintiffs to amend, or otherwise. Further, the distinction in this case between a motion to intervene and a motion to amend by adding plaintiffs is purely formal, for it appeared at the hearing on the motion that it was being made with the consent of the added plaintiffs, who were thereafter represented by the same counsel as represented the initial plaintiffs. See *Jones* v. *United Gas Improvement Corp.* 68 F.R.D. 1, 5 (E.D.Pa. 1975); 6 Wright & Miller, Federal Practice and Procedure § 1474, at 386 (1971) ("Finally, a party may make a Rule 15(a) amendment to add, substitute, or drop parties to the action"). Whether we treat the new plaintiffs as parties added by an amendment which relates back to the original complaint or as interveners makes no difference in the circumstances of this case. Unless conditions have been imposed, "an intervenor in an action or proceeding is, for all intents and purposes, an original party." *In re Raabe, Glissman & Co., Inc.,* 71 F. Supp. 678, 680 (S.D.N.Y. 1947). 7A Wright & Miller, Federal Practice and Procedure § 1920, at 611 (1972). Further, in our practice prior to the new rules, intervention has been allowed though the original parties had no standing. *Attorney Gen.* v. *Henry,* 262 Mass. 127, 128-131 (1928). See

*Jacobson* v. *Parks & Recreation Commn. of Boston,* 345 Mass. 641, 642-644 (1963).

Nor do we see any substantive reason to limit the broad amendment powers exercised under our practice so as not to apply where (as here) the original parties do not have standing. It is true that the intrusion of such parties may lead to harassment and complicate the litigation to the prejudice of an applicant for relief from the zoning laws. See *Save the Bay, Inc.* v. *Department of Pub. Util.,* 366 Mass. 667, 672. However, whether a party is "aggrieved" is a matter of degree (see e.g., *Carey* v. *Planning Bd. of Revere,* 335 Mass. at 742; *Williams* v. *Building Commr. of Boston,* 1 Mass. App. Ct. 478, fn.1, 481 [1973]); and the variety of circumstances which may arise seems to call for the exercise of discretion rather than the imposition of an inflexible rule. No abuse of discretion has been shown in this case.

2. The hospital's attack on Rafferty's standing fails. The evidence indicates that Rafferty is either an abutter to the hospital or an abutter to such an abutter. In either case Rafferty's entitlement to notice as one of "the owners of all property ... to be affected," pursuant to G. L. c. 40A, § 17, as amended through St. 1973, c. 296, § 2,[5] furnishes a sufficient basis for the trial judge's finding that Rafferty is a "person aggrieved." *Waltham Motor Inn, Inc.* v. *LaCava,* 3 Mass. App. Ct. at 214, citing *Marotta* v. *Board of Appeals of Revere,* 336 Mass. at 204. The hospital presented no countervailing evidence that Rafferty could have no "legitimate interest in preserving the integrity of the district." See *Waltham Motor Inn, Inc.* v. *LaCava,* 3 Mass. App. Ct. at 217. Further, it appeared from Rafferty's testimony and the plan of the hospital and the surrounding neighborhood that he was a home owner at 74 Griswold

---

[5] General Laws c. 40A, § 17, as so amended, provided in pertinent part: "The Board of Appeals shall fix a reasonable time for the hearing of ... any petition for a variance, and shall ... send notice by mail, postage prepaid, to the petitioner and to the owners of all property deemed by the board to be affected thereby including the abutters and the owners of land next adjoining the land of the abutters ...."

Street in the same Residence B district in which the hospital is located. (Indeed the board's decision contains an admission that "the dwellings on Griswold Street are in a Residence B zone.") He was thus entitled to assert his interest in having the Residence B district in which he owns real estate and resides maintained as such. *Reynolds* v. *Board of Appeal of Springfield,* 335 Mass. 464, 470 (1957). See *Carey* v. *Planning Bd. of Revere,* 335 Mass. at 743; *Shriners' Hosp. for Crippled Children* v. *Boston Redevelopment Authy.,* 4 Mass. App. Ct. 551, 555 (1976), further appellate review granted, 371 Mass. 899 (1976).[6]

3. We now turn to the merits. At the end of the hospital's case the judge advised the parties that (accepting the hospital's evidence) "I do not find ... from what I have heard, any conditions especially affecting this parcel that do not affect the zoning district generally." We cannot say that this finding, included, in effect, in his "Findings, Rulings and Order for Judgment," is clearly erroneous.[7]

---

[6] Our determination that Rafferty has standing makes it immaterial whether Wagner can be said to have standing in the circumstances of this case. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston,* 324 Mass. 427, 431-432 (1949).

[7] We note that the "Findings, Rulings and Order for Judgment" by the judge merely states that, after a view and after hearing the evidence, he is "unable to find" the various criteria for a variance including the requirement "that the conditions affecting the parcel do not affect the Residence B zone generally." These "Findings, Rulings and Order for Judgment" cannot be said to comply with the requirements of Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). And such findings were required as well when (as in this case) the judge found that the hospital had not satisfied its burden (see *Hunt* v. *Milton Sav. Bank,* 2 Mass. App. Ct. 133, 138 [1974]; see also *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 292 [1972]) of justifying the variance and allowed the plaintiffs' "Motion for Dismissal" (which requested annulment of the variance on the ground that the hospital "failed to meet its burden of proof with respect to the statutory criteria ..."). In the posture of this case this motion is the functional equivalent of an ordinary motion for dismissal by a defendant under Mass.R.Civ.P. 41(b)(2), 365 Mass. 804 (1974), on the ground that the evidence at the end of the case, presented by a plaintiff with the burden of proof, was insufficient. Judgment having been entered on the merits on the basis of that motion, the judge was required under Mass.R.Civ.P. 41(b)(2) to "make findings as provided in Rule 52(a)." Our review — as in any case where the judgment is based on findings under rule

Rafferty *v.* Sancta Maria Hospital.

None of the factors which the hospital lists in its brief is inconsistent with the judge's conclusion. There is no evidence that the topographical features mentioned by the hospital are peculiar to the locus. *Cass* v. *Board of Appeal of Fall River,* 2 Mass. App. Ct. 555 (1974). Contrast *Broderick* v. *Board of Appeal of Boston,* 361 Mass. 472, 477-478 (1972). Nor can the contiguity of the locus to an industrial zone or to the nonconforming hospital serve as a basis for a finding of unique conditions necessary to the variance. *Coolidge* v. *Zoning Bd. of Appeals of Framingham,* 343 Mass. 742, 745 (1962). *Sullivan* v. *Board of Appeals of Belmont,* 346 Mass. 81, 84 (1963). As the judge intimated and as was said in *Coolidge* v. *Zoning Bd. of Appeals of Framingham,* 343 Mass. at 746, "What the interveners seek in effect and what the board has granted is a change in the zone boundary. . . . It may well be . . . that . . . such a change would be beneficial to the community. This, however, is a matter for consideration by the [city] under procedures adopted for amendments to its zoning [ordinance]."

*Judgment affirmed.*

---

52(a) — is under the clearly erroneous standard. Smith & Zobel, Rules Practice § 41.10, at 60 (1977); 9 Wright & Miller, Federal Practice and Procedure § 2371, at 222-225 (1971). Ordinarily where the findings do not comply with the requirements of rule 52(a), we would remand for further findings to facilitate review. The parties here have argued the case in effect under the clearly erroneous standard and, in the circumstances of this case, we do not find a remand necessary.